IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:16-CT-3194-FL

| | |
|---|---|
| S. SHANE SMITH, | ) |
|       Plaintiff, | ) |
| v. | )       ORDER |
| L. CARTER, DONALD MOBLEY, DR. CLIFFORD CURTIS, and NURSE FLEMMING, | ) |
|       Defendants. | ) |

This matter is before the court on motions for summary judgment filed by defendant Curtis (DE 57) and defendants Carter, Mobley, and Flemming's (the "state defendants") (DE 73), pursuant to Federal Rule of Civil Procedure 56. The motions have been fully briefed and thus the issues raised are ripe for decision.

**STATEMENT OF THE CASE**

On July 29, 2016, plaintiff, a state inmate proceeding pro se, filed the instant civil rights action pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq., alleging defendants were deliberately indifferent to his serious medical needs and failed to accommodate his disability. That same day, plaintiff filed motion for temporary restraining order and preliminary injunction, requesting a court order directing defendants to provide certain medical supplies. On September 13, 2016, the court directed the North Carolina Department of Public Safety ("DPS") to respond to the motion, conducted frivolity review of plaintiff's complaint, and allowed the matter to proceed as to all defendants. DPS subsequently filed response to the motion for temporary restraining order and preliminary injunction. On October 20, 2016, the court denied

plaintiff's motion as moot, in light of DPS and plaintiff's representations that plaintiff had received the relevant medical supplies.

On December 20, 2016, defendant Curtis filed the following: 1) answer to complaint; 2) motion for summary judgment solely addressing plaintiff's failure to exhaust administrative remedies; 3) motion to dismiss for improper venue; and 4) motion to dismiss for failure to state a claim solely addressing plaintiff's official capacity claim. Plaintiff responded to the motions, and also filed motions for bench trial and for waiver of rules and request for telephonic hearing. On May 24, 2017, the court granted defendant Curtis's motion to dismiss the official capacity claims asserted against him, denied his remaining motions, and denied as moot plaintiff's motions for bench trial and for waiver of rules. In the interim, the state defendants filed their answer to plaintiff's complaint.

On July 3, 2017, the court entered case management order governing discovery and dispositive motions deadlines. On July 13, 2017, plaintiff filed motion to appoint counsel, which the court subsequently denied. On February 26, 2018, defendant Curtis filed the instant motion for summary judgment, arguing the record evidence establishes no reasonable jury could find he was deliberately indifferent to plaintiff's medical needs, plaintiff's claims are moot, plaintiff cannot forecast facts to establish an injury proximately caused by defendant Curtis, and that he is entitled to qualified immunity. In support of the motion, defendant Curtis filed statement of material facts and appendix, which included defendant Curtis's personal affidavit, plaintiff's medical records, and certain state court records.

After multiple extensions of the case management deadlines, the state defendants filed the instant motion for summary judgment, arguing that plaintiff's claims are moot, that the record

evidence establishes no reasonable jury could find they were deliberately indifferent to plaintiff's medical needs, and that various immunity doctrines shield these defendants from liability. In support of the motion, the state defendants filed statement of material facts and appendix, which included personal affidavit of Priscilla Diane Dorey, RN, a nurse supervisor at plaintiff's current prison.

Plaintiff responded to defendants' motions by filing memorandum in opposition, statement of material facts, and appendix. As exhibits attached to the appendix and response, plaintiff filed a personal affidavit, various medical records, the state defendants' job descriptions, sick call appointment requests, a grievance, and hand-drawn images of his hands.

**STATEMENT OF THE FACTS**

As defendants have moved for summary judgment, the court recounts the facts in the light most favorable to plaintiff, drawing all reasonable inferences in his favor. As a result of congenital anomaly, plaintiff was born without fingers and toes. (Smith Aff. (DE 78-1) ¶ 4). Plaintiff also has approximately 60 less bones in his body compared to a normal person. (Id. ¶ 6). Plaintiff has a small appendage on his left hand similar to a thumb, but with significantly less functionality. (Id. ¶ 8-10). The appendage allows him to feed and dress himself, although with considerable difficulty. (Id.) In lieu of fingers on his left hand, plaintiff has "four deep crevices which are excessively sensitive and very vulnerable to irritation and even infection if not properly accommodated or cared for." (Id. ¶ 11). The "slightest alteration" to plaintiff's left hand, such as a callus, rash, or other injury, inhibits his ability to grasp objects and thus can affect whether plaintiff can feed or clothe himself. (Id. ¶ 12-13).

Plaintiff has a similar thumb-like appendage on his right hand, but it lacks a "hinge joint"

3

and thus he is unable to grasp objects solely with his right hand. (Id. ¶ 15). Plaintiff also has no fingers on his right hand, but he does have three "protrusions" where his middle, ring, and pinky fingers should be. (Id. ¶ 17-18). These protrusions are also extremely sensitive and are "prone to splitting open if hit or bumped in the wrong way." (Id. ¶ 18). As a result of plaintiff's condition, he must use both hands to eat, drink, and clothe himself. (Id. ¶¶ 20-23).

Plaintiff was also born with out toes, which significantly affects his balance when walking. (Id. ¶¶ 24-26). The ends of plaintiff's feet where his toes should be "are probably the most painfully sensitive area" of plaintiff's body. (Id. ¶ 27).

Plaintiff has been incarcerated for the past 28 years. (Id. ¶ 2). Since approximately the mid 1990s, plaintiff has received Betasept Antibacterial Surgical Scrub ("Betasept") to clean the sensitive crevices in his hands and feet. (Id. ¶ 37). For the past 10-12 years, plaintiff also has been prescribed Hydrocerin (Eucerin) cream ("Hydrocerin") to counteract any dry skin side effects caused by Betasept. (Id. ¶ 38). Plaintiff also has been provided T-Gel shampoo since the mid-1990s, which washes from his scalp more easily than other shampoos, and thus does not cause the same "discomfort and itchiness" caused by other shampoos. (Id. ¶ 40). Finally, plaintiff has also been provided flex-knuckle bandages and cotton swabs to protect or clean the sensitive areas of his hands and feet. (Id. ¶¶ 41-42). The Betasept, Hydrocerin, and T-Gel prescriptions had been continuously approved and renewed by multiple DPS physicians, until plaintiff was transferred to Warren Correctional Institution ("Warren C.I."). (Id. ¶¶ 43, 52).

Plaintiff was transferred to Warren C.I. on or about June 18, 2015. (Id. ¶ 44). On "numerous occasions" (plaintiff does not provide dates) after his arrival at Warren C.I., plaintiff submitted written requests or spoke personally to defendants Flemming, Mobley, and Carter concerning his

4

disability and "the medical supplies that I needed." (Id. ¶¶ 47-49). Defendant Flemming is the nurse supervisor for Warren C.I.; defendant Mobley is the assistant superintendent for programs at Warren C.I.; and defendant Carter is the Americans with Disabilities Act coordinator for DPS.[1] (Id.) The state defendants either failed to respond to plaintiff's written requests, or made no effort to assist plaintiff in response to his verbal requests. (Id.) As a result of their alleged failure to respond to the requests, plaintiff's hands and feet "became extremely sore, chafed, and itchy [and he was] unable to perform simple tasks without great difficulty, such as holding an eating utensil . . . basic hygiene needs, and dressing [himself]." (Id. ¶ 50).

In addition to the foregoing requests, plaintiff submitted sick call requests concerning renewal of his prescriptions for Betasept, Hydrocerin, and coal tar shampoo.[2] (Id. ¶ 51). On April 5, 2016, plaintiff was seen at the Warren C.I. medical clinic, and requested coal tar shampoo and an extra mattress to assist with hip pain. (Pl.'s App. (DE 81) Ex. 9 at 5). The nursing notes reflect plaintiff did not complain of any pain or discomfort in his hands or feet at that visit. (Id. at 3). Defendant Curtis initially denied plaintiff's request for coal tar shampoo and extra mattress, but after further chart review on April 25, 2016, he ordered that plaintiff be provided those items. (Id. at 7). On May 13, 2016, nursing staff referred plaintiff's chart to defendant Curtis for determination of whether Betasept prescription should be renewed. (Curtis Aff. (DE 59-1) ¶ 8; Pl.'s App. (DE 81) Ex. 9 at 8). After chart review, defendant Curtis determined Betasept was not medically necessary based on plaintiff's current health issues and thus discontinued the prescription. (Curtis Aff. (DE

---

[1] As noted, defendants Flemming, Mobley, and Carter are collectively referred to herein as the "state defendants."

[2] The coal tar shampoo appears to be the same as "T-Gel shampoo." Plaintiff does not allege defendants were deliberately indifferent to his serious medical needs by failing to provide coal tar shampoo.

5

59-1) ¶ 8). On May 17, 2016, plaintiff submitted a "sick call" to request renewal of his prescriptions for Betasept and Hydrocerin. (Pl.'s App. (DE 81) Ex. 8 at 3). Following a clinic visit on June 10, 2016, plaintiff's chart was again referred to defendant Curtis for renewal of Betasept and Hydrocerin prescriptions. (Pl.'s App. (DE 81) Ex. 9 at 10-12). On June 16, 2016, defendant Curtis entered an order stating, "[plaintiff needs] to be scheduled for MD visit to determine need for Betasept and other medications." (Id. at 13). Defendant Curtis saw plaintiff in the medical clinic on July 15, 2016, and the clinical encounter note from that visit reflects that plaintiff "denied rash" and "[plaintiff] found not to have any medical problems requiring . . . Betasept [or hydrocerin]." (Id. at 14). Additionally, under the section labeled "skin" in the encounter note, defendant Curtis wrote "skin intact . . . no gross abnormalities." (Id.) Defendant Curtis renewed a number of plaintiff's other medications (prescribed for unrelated medical issues) and ordered additional lab work. (Id. at 15). Plaintiff does not appear to have submitted any additional sick call requests between July 16, 2016, and July 29, 2016, the date plaintiff filed the instant lawsuit.

On September 22, 2015, plaintiff initiated a civil lawsuit against DPS in state court, alleging DPS failed to comply with the terms of an earlier settlement agreement between plaintiff and DPS. Smith v. N.C. Dep't of Pub. Safety, No. 15CVS274 (N.C. Super. Ct. Sept. 22, 2015); (Resp. to Mot. for TRO (DE 16) ¶ 6). During the course of that litigation, plaintiff submitted oral motion requesting that Warren C.I. provide certain medical supplies, including Hydrocerin and Betasept. (Resp. to Mot. for TRO (DE 16) ¶¶ 11-12). On July 5, 2016, the state court ordered that Warren C.I. provide plaintiff Hydrocerin and Betasept. (Id. ¶ 12). DPS then filed a "motion for relief from order" directing DPS to provide the medical supplies. (Id. ¶ 14). On August 15, 2016, the state court denied DPS's motion for relief from order, but provided DPS an additional 30 days to provide

the medical supplies. (Id.)

As a result of the foregoing, when defendant Curtis saw plaintiff on July 15, 2016, a state court order was in place[3] requiring Warren C.I. to provide plaintiff with Betasept and Hydrocerin. Defendant Curtis, however, maintains that he was not aware of the state court order when he saw plaintiff on July 15, 2016, or at any other time thereafter until service of this lawsuit. (Curtis Aff. (DE 59-1) ¶ 9). Plaintiff's affidavit submitted in response to defendant Curtis's motion for summary judgment does not allege he informed defendant Curtis about the existence of the court order during the July 15, 2016, examination. (See Pl.'s Aff. (DE 78-1) ¶¶ 52-54).

**DISCUSSION**

A.    Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading" but "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248-49; see also Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The nonmoving party thus "bears the burden of showing, by means of affidavits or other verified evidence, that [a] genuine dispute of material fact exists." Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003). There is no issue for trial unless there is sufficient

---

[3]As set forth above, DPS filed motion for relief from that order on an unidentified date, and the state court on August 15, 2016, provided DPS an extension of 30 days to comply with the order.

7

evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B.   Analysis

Plaintiff's complaint does not clearly identify his legal claims, but his response to defendants' motions for summary judgment states that he is bringing an Eighth Amendment claim for deliberate indifference to serious medical needs. (Resp. (DE 79) at 1). Plaintiff's complaint also cites to the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq., and vaguely alleges defendants refused to provide assistance regarding his disability issues. The court begins with plaintiff's Eighth Amendment deliberate indifference claim and thereafter addresses plaintiff's ADA claim.

1.   Deliberate Indifference to Serious Medical Needs

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (1996). "In order to make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (internal quotation omitted). The first prong is objective – the prisoner must show that "the deprivation of [a] basic human need was objectively sufficiently serious." Id. (internal quotation omitted). In the medical context, a basic human need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)).

The second prong is subjective – the prisoner must show that "<u>subjectively</u> the officials acted with a sufficiently culpable state of mind." See <u>Strickler</u>, 989 F.2d at 1379 (internal quotations omitted). The mental state for "deliberate indifference entails something more than negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." <u>Farmer v. Brennan</u>, 511 U.S. 825, 835 (1994). "It requires that a prison official know of and disregard the objectively serious condition, medical need, or risk of harm." <u>Shakka v. Smith,</u> 71 F.3d 162, 166 (4th Cir. 1995); see <u>Farmer</u>, 511 U.S. at 837. A plaintiff therefore must establish the prison official's "actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by [the official's] action or inaction." <u>Jackson v. Lightsey</u>, 775 F.3d 170, 178 (4th Cir. 2014) (citing <u>Farmer</u>, 511 U.S. at 837–39). The subjective knowledge requirement can be proved "through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge . . . ." <u>Scinto v. Stansberry</u>, 841 F.3d F.3d 219, 225–26 (4th Cir. 2016). Additionally a plaintiff can establish deliberate indifference by showing "that a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official . . . had been exposed to information concerning the risk and thus must have known about it." <u>Parrish ex rel. Lee v. Cleveland</u>, 372 F.3d 294, 303 (4th Cir. 2004) (first alteration in original) (internal quotation omitted) (quoting Farmer, 511 U.S. at 842).

Deliberate indifference is thus "a particularly high bar to recovery." <u>Iko</u>, 535 F.3d at 241. For claims involving medical care, "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are

9

alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Negligence or medical malpractice in diagnosis or treatment are not exceptional circumstances. See id.; see also Estelle v. Gamble, 429 U.S. 97, 105–08 (1976).

  a.  Defendant Curtis

The court begins with plaintiff's deliberate indifference claim against defendant Curtis. Assuming without deciding that plaintiff's skin issues in the crevices where his fingers and toes should be are serious medical issues, the record in this case does not demonstrate defendant Curtis was deliberately indifferent to plaintiff's medical issues when he refused to renew prescriptions for Betasept and Hydrocerin. As set forth above, after plaintiff notified nursing staff about his requests for refills of Betasept and Hydrocerin, defendant Curtis performed at least two chart reviews and personally examined plaintiff to determine whether the medications were medically necessary. (Pl.'s App. (DE 81) Ex. 9 at 8-15). Additionally, the medical record notes from defendant Curtis's evaluation of plaintiff state that plaintiff "denied rash" and that his skin was "intact." (Id. at 14). Plaintiff does not dispute that his skin was "intact" at the time he saw defendant Curtis, and none of the sick call request forms plaintiff submitted state that he was currently experiencing skin problems. (Pl.'s App. (DE 81) Ex. 8). As a result of these evaluations, defendant Curtis determined the medications were not medically necessary, though he did renew multiple prescriptions for other conditions. (Pl.'s App. (DE 81) Ex. 9 at 14-15). Plaintiff, as set forth above, does not agree with defendant Curtis's evaluation, but plaintiff's disagreement with his course of treatment does not standing alone establish defendant Curtis was deliberately indifferent to plaintiff's medical needs. See Wright, 766 F.2d at 849 (holding "disagreement between an inmate and a physician over the inmate's proper medical care" are insufficient to establish deliberate indifference absent exceptional

10

circumstances); Jackson, 775 F.3d at 178 (holding that prison doctor was not deliberately indifferent where he evaluated plaintiff, made erroneous diagnosis, and substantially modified his medication regimen as a result).

Plaintiff argues defendant Curtis's failure to renew these prescriptions placed him at substantial risk of developing a severe rash or infection leaving him unable to care for himself. See Heyer v. United States Bureau of Prisons, 849 F.3d 202, 210 (4th Cir. 2017) (deliberate indifference standard does not require that plaintiff suffer actual injury, but only that defendants' actions or inaction placed plaintiff at "substantial risk of serious harm"). There is no record evidence, however, establishing defendant Curtis was aware of the alleged risk of developing a painful rash or infection. See Jackson, 775 F.3d at 178 (defendant must have "actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by [the defendant's] action or inaction."). As noted, the sick call requests submitted by plaintiff do not indicate he was at risk for developing a severe rash or infection if the medications were not renewed. (Pl.'s App. (DE 81) Ex. 8). Plaintiff's affidavit also fails to state that he made defendant Curtis – or other medical personnel – aware of the potential risk of infection or serious skin rash.[4] (See Pl.'s Aff. (DE 78-1) ¶¶ 44-54).

Plaintiff also cannot establish deliberate indifference under the Parrish presumption, which provides that deliberate indifference can be inferred where the medical condition was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official . . . had been exposed to information concerning the risk and thus must have known about it . . . ." Parrish ex rel. Lee, 372 F.3d at 303; see also Scinto, 841 F.3d at

---

[4]Notably, defendant Curtis testified that during the evaluation, plaintiff did not state he was at risk for developing a severe rash or infection without the medications. (Curtis Aff. (DE 59-1) ¶ 10).

11

229. There is no evidence in the record suggesting plaintiff's infections or severe skin rash were longstanding, well-documented conditions. At most, the evidence establishes plaintiff had longstanding prescriptions for Hydrocerin and Betasept. But there is no documentation or testimony establishing that these medications were prescribed to prevent plaintiff from developing an infection or severe rash that would essentially render plaintiff unable to care for himself.

Plaintiff emphasizes the July 5, 2016, state court order directing prison officials to provide him with Hydrocerin and Betasept was entered before defendant Curtis refused to renew his medications. Plaintiff does not provide competent summary judgment evidence that defendant Curtis was aware of the court order during the relevant time frame. For his part, defendant Curtis testified that plaintiff never informed him about the order. (Curtis Aff. (DE 59-1) ¶ 10). But even assuming defendant Curtis was aware of the state court order, the order itself does not indicate plaintiff would suffer severe medical problems if defendant Curtis refused to provide the medications, and thus is it not relevant to the question before the court – whether defendant Curtis provided constitutionally inadequate medical care by refusing to renew the prescriptions. (See Curtis Aff. (DE 59-1) Ex. 3).[5]

Finally, the court notes plaintiff cannot make out a claim for deliberate indifference based on delayed medical treatment. A deliberate indifference claim premised on delay in treatment requires a showing that "the delay result[ed] in some substantial harm to the patient such as marked exacerbation of the prisoner's medical condition or frequent complaints of severe pain." Formica v. Aylor, ___ F. App'x ___, 2018 WL 3120790, at *8 (4th Cir. June 25, 2018) (internal quotation

---

[5] As set forth above, the state court ultimately provided DPS until approximately September 15, 2016, to provide plaintiff with the requested medical supplies, which extended beyond the time in which plaintiff was under defendant Curtis's care. (Resp. Mot. for TRO (DE 16) ¶ 14; Pl.'s Aff. (DE 78-1) ¶ 55).

omitted); see also Sharpe v. S.C. Dep't of Corr., 621 F. App'x 732, 734 (4th Cir. 2015); Webb v. Hamidullah, 281 F. App'x 159, 166-67 (4th Cir. 2008);.[6]

Here, plaintiff has not produced sufficient evidence to withstand summary judgment on a claim for delayed medical care because there is insufficient evidence that he was substantially harmed <u>by the delay</u> in receiving Betasept and Hydrocerin, or that prison officials were aware the delay was exacerbating plaintiff's condition. As set forth above, plaintiff first initiated his request for renewals of Betasept and Hydrocerin on May 17, 2016, and defendant Curtis ultimately denied those requests on July 15, 2016. (Pl.'s App. (DE 81) Ex. 8 at 3; Ex. 9 at 14). While plaintiff generally alleges that defendants' failure to provide Betasept and Hydrocerin caused his hands to become "extremely sore, chafed, and itchy" and he was "unable to perform simple tasks without great difficulty," plaintiff does not attribute such harm to the two-month delay between the time he initiated his request for the prescription refills and the date defendant Curtis ultimately denied those requests. (Pl.'s Aff. (DE 78-1) ¶ 50). In fact, the medical records submitted by plaintiff establish that he was not substantially harmed by the delay. When he was seen on July 15, 2016, defendant Curtis specifically noted plaintiff "denied rash" and that the skin was "intact," and plaintiff does not specifically dispute that assessment. (Pl.'s App. (DE 81) Ex. 9 at 14).

Additionally, none of the sick call requests plaintiff submitted between May 17, 2016, and July 15, 2016, indicate plaintiff informed medical staff he was experiencing pain or discomfort based on his inability to obtain Betasept or Hydrocerin. (Pl.'s App. (DE 81) Ex. 8). In the absence of

---

[6]The Fourth Circuit has not addressed the appropriate standard for evaluating delayed medical care claims under the Eighth Amendment in a published opinion. Formica, 2018 WL 3120790, at *8. In Formica, the court noted that at least four other courts of appeals have adopted the substantial harm standard set forth above. See Alderson v. Concordia Parish Corr. Facility, 848 F.3d 415, 422 (5th Cir. 2017); Garrett v. Stratman, 254 F.3d 946, 950 (10th Cir. 2001); Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994), abrogated on other grounds by Hope v. Pelzer, 536 U.S. 730 (2002); Wood v. Housewright, 900 F.3d 1332, 1335 (9th Cir. 1990).

13

specific evidence establishing that medical officials were aware the delay was causing exacerbation of plaintiff's condition, plaintiff cannot establish a deliberate indifference claim premised on delayed medical care. See Webb, 281 F. App'x at 166-67 (noting delay in medical care claim is not viable where prisoner "did not present any information to his physician during the [delay] to indicate the situation was an emergency mandating immediate treatment" (internal quotation marks omitted)); see also Price v. Carey, No. 91-6643, 1992 WL 34208, at *4 (4th Cir. Feb. 26, 1992).

Based on the foregoing, defendant Curtis is entitled to judgment as a matter of law on plaintiff's claim that he was deliberately indifferent to plaintiff's serious medical needs.

      b.    State Defendants

Plaintiff also alleges the state defendants were deliberately indifferent to his serious medical needs. Plaintiff does not allege the state defendants were involved in his direct medical care. Non-medical prison officials may be individually liable for deliberate indifference to serious medical needs only where they 1) "failed promptly to provide an inmate with needed medical care"; 2) "deliberately interfered with the prison doctors' performance;" or 3) "tacitly authorized or were indifferent to the prison officials' constitutional violations." Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990), overruled on other grounds by Farmer, 511 U.S. at 837.

As set forth above, the medical records in this case establish plaintiff was being treated by medical staff – and not the state defendants[7] – for his skin and other medical issues. Plaintiff states that he submitted written and verbal requests concerning his "disability and medical needs" to the state defendants, but plaintiff's affidavit entirely fails to explain when those requests were made or

---

[7]As noted, defendant Flemming (one of the state defendants) is the Warren C.I. nursing supervisor. The medical records submitted by plaintiff do not establish that she provided any medical care or that she was otherwise involved in any decisions to provide plaintiff the subject medical supplies. (Pl.'s App. (DE 81) Exs. 4, 8-9).

14

identify which specific medical supplies he requested. (Pl.'s Aff. (DE 78-1) ¶¶ 47-50). Plaintiff thus has provided no evidence suggesting the state defendants failed to provide him access to medical providers, interfered with prescribed courses of treatment, or tacitly authorized prison officials' constitutional violations. See Miltier, 896 F.2d at 854; see also Formica, 2018 WL 3120790, at *9-10 (holding nursing supervisor was not entitled to summary judgment on deliberate indifference claim where she was aware of plaintiff's medical condition and was "closely involved" in plaintiff's treatment, but failed to scheduled necessary dental operations). In the absence of such factual allegations, the state defendants are entitled to rely on the opinions of medical staff that the Betasept and Hydrocerin were not necessary. Iko, 535 F.3d at 242. Accordingly, the state defendants are also entitled to judgment as a matter of law on plaintiff's deliberate indifference claims.

2. ADA Allegations

As noted, plaintiff also cites to the ADA, 42 U.S.C. § 12131 et seq., in his complaint, and his affidavit alleges defendants failed to "recognize" his disability or accommodate his disability by providing medical supplies. To establish an ADA claim, plaintiff must show 1) "he has a disability"; 2) "he is otherwise qualified for the benefit in question"; and 3) "that he was excluded from the benefit due to discrimination solely on the basis of the disability." Baird v. Rose, 192 F.3d 462, 467 (4th Cir. 1999). Assuming without deciding plaintiff has established the first two elements, he has produced no evidence suggesting that he was denied medical supplies "due to discrimination solely on the basis of [his] disability." Id.; see also Spencer v. Easter, 109 F. App'x 571, 573 (4th Cir. 2004) ("Because there is no evidence in the record to suggest that any failure by the Defendants to obtain Spencer's medication in a timely manner stemmed from any discriminatory intent due to

15

any alleged disability, we find that Spencer fails to establish a prima facie claim under the ADA."); Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) (holding "[ADA] would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners. No discrimination is alleged; [plaintiff] was not treated worse because he was disabled."). In fact, plaintiff notes that defendant Curtis "has a notorious reputation for not renewing prisoner's medications and/or supplies when they expire." (Pl.'s Decl. (DE 5-1) ¶ 14). Plaintiff's allegation thus specifically refutes any claim that plaintiff was discriminated against on the basis of his disability, because plaintiff himself alleges that multiple non-disabled prisoners were treated in the same manner.[8]

Accordingly, defendants are entitled to summary judgment on plaintiff's ADA claims as well.

## CONCLUSION

Based on the foregoing, defendant Curtis and the state defendants' motions for summary judgment (DE 57, 73) are GRANTED, and plaintiff's claims are DISMISSED with prejudice. The clerk of court is DIRECTED to close this case.

SO ORDERED, this the 26th day of September, 2018.

LOUISE W. FLANAGAN
United States District Judge

---

[8] In addition, plaintiff cannot maintain an ADA claim against defendants in their individual capacities. See 42 U.S.C. § 12131(1)(A)-(B) (defining "public entity" under the ADA as "any State or local government"); Alsbrook v. City of Maumelle, 184 F.3d 999, 1011 (11th Cir. 1999).